UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE GONZALEZ,

    Plaintiff,

v.

FALLANGHINA, LLC, et al.,

    Defendants.

Case No. 16-cv-01832-MEJ

**ORDER RE: MOTION FOR SETTLEMENT OF FLSA CLAIMS**

Re: Dkt. No. 43

## INTRODUCTION

Plaintiff Jose Gonzalez ("Plaintiff") and Defendants Fallanghina, LLC dba Paisan Osteria ("Paisan"); Longbranch Berkeley LLC dba Longbranch Saloon ("Longbranch"); Hal Brandel; and Walter Wright (collectively, "Defendants") have filed a Joint Motion to Approve Settlement of Plaintiff's claims brought under the Fair Labor and Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Mot., Dkt. No. 43; *see* Settlement, Dkt. No. 43-1. The Court held a hearing on the matter on April 13, 2017. Having considered the parties' submissions, the record in this case, and the relevant legal authority, the Court **GRANTS** the parties' Motion.

## BACKGROUND

### A. Factual Background

Paisan Osteria and Longbranch Saloon are restaurants located in Berkeley, California. *See* Second Am. Compl. ("SAC") ¶ 9, Dkt. No. 39. Brandel owns the building that houses both restaurants and is a member and controlling shareholder of Longbranch. *Id.* ¶ 2. Wright is a member and controlling shareholder of Paisan. *Id.* ¶ 3.

Around September 2013, Paisan hired Plaintiff as a dishwasher and paid him $10.50 an hour. *Id.* ¶ 8. Within a week, Plaintiff was promoted to the position of a cook. *Id.* Longbranch opened next door to Paisan in 2014; the restaurants were separated by a wall, with a doorway entry

between them. *Id.* ¶ 9. Starting in December 2014, Plaintiff worked at Paisan as a cook from 8:00 a.m. to 3:00 or 4:00 p.m., then immediately walked next door to work at Longbranch as a dishwasher until approximately 11:00 p.m. *Id.* ¶ 11. Paisan and Longbranch shared several hourly employees, including lead cook, bar manager, front desk personnel, and wait staff. *Id.* Plaintiff was discharged from employment at Paisan and Longbranch around December 15, 2015. *Id.* ¶ 39.

**B.      Procedural Background**

Plaintiff initiated this litigation on May 31, 2016 individually and on behalf of a putative FLSA collective. *See* Compl., Dkt. No. 1. On August, 19, 2016, Plaintiff filed the operative SAC, which asserts five claims. *See* SAC. He asserts the first claim for violation of section 207 of the FLSA, 29 U.S.C. § 207, against all Defendants on behalf of himself and similarly situated individuals. *Id.* at 2 & ¶¶ 15-22. He seeks to represent a putative collective of "hourly, non-exempt employees who worked for the joint employers [Paisan] and Longbranch, and who were not paid overtime wages pursuant to 29 U.S.C. § 207[.]" *Id.* ¶ 6. As an individual, Plaintiff asserts the remaining four claims against only Paisan and Longbranch: (1) California Labor Code section 510; (2) California Labor Code sections 226.7 and 512; (3) California Labor Code sections 201 through 203; and (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 23-49.

The parties exchanged their initial disclosures and engaged in informal discovery; Defendants produced Plaintiff's and other putative collective members' time and payroll records and Paisan's and Longbranch's employee handbooks. Cha Decl. ¶ 3, Dkt. No. 43-1. On December 15, 2016, the parties participated in private mediation, which resulted in an agreement upon terms of a proposed settlement. Mot. at 5. On December 23, 2016, Plaintiff notified the Court that the parties reached a settlement of his individual FLSA claim. Letter, Dkt. No. 41. At this point, Plaintiff had not moved for collective certification. Although Plaintiff filed the SAC on behalf of similarly situated individuals, the Settlement only resolves Plaintiff's individual claims. Mot. at 2; *see* Settlement, Cha Decl., Ex. A. Plaintiff no longer intends to pursue a putative class or collective action on behalf of other employees. Letter at 1; *see* Mot. at 2 ("[T]he Parties have

2

settled out Plaintiff's individual claims and seek approval of the settlement for his individual claims.").

The parties now seek the Court's approval of the proposed settlement. The Court continued the hearing on the matter until April 13, 2017 and ordered the parties to file a supplemental brief to address three issues: (1) how they calculated Plaintiff's recovery, (2) whether dismissal would prejudice putative collective members, and (3) the scope of the release. Order, Dkt. No. 44. The parties timely submitted a joint supplemental brief. Suppl. Br., Dkt. No. 45.

## SETTLEMENT TERMS

The Settlement requires Defendants to pay a gross amount of $30,329. Settlement ¶ 3. Of that amount, Plaintiff will receive a total of $14,660: (1) $7,233 as reimbursement for Plaintiff's alleged unpaid wages and (2) another $7,233 designated for penalties and interest for those unpaid wages. *Id.* ¶ 3(a)-(b). The remaining $15,863 represents Plaintiff's attorneys' fees and costs and is to be paid directly to Plaintiff's counsel. *Id.* ¶ 3(c).

The Settlement also provides for the dismissal of (1) all of Plaintiff's individual claims with prejudice and (2) Plaintiff's collective claim without prejudice. *Id.* ¶ 2.

## DISCUSSION

**A. Dismissal of Plaintiff's Individual Claims**

1. <u>Legal Standard</u>

"The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)). "It does so in part by setting forth substantive wage, hour, and overtime standards." *Id.* An employee cannot waive his or her rights under the FLSA "because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks omitted). Thus, either the Secretary of Labor or a district court must approve the settlement of any FLSA claim. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, 2016 WL 153266, at *3 (N.D. Cal.

Jan. 13, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

The Ninth Circuit has identified criteria courts must consider in determining whether to approve a FLSA settlement. *Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Courts in this district typically apply the criteria the Eleventh Circuit established in *Lynn's Food Stores*, which requires an FLSA settlement to constitute "'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also Dunn*, 2016 WL 153266, at *3 (applying *Lynn Food's Stores* to settlement of individual FLSA claims).

2. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of [the d]efendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks omitted). This case involves contested issues of FLSA coverage, which constitute a bona fide dispute.

Defendants assert without citation that this action is unsuited for FLSA treatment, as any collective would only consist of twelve members. Mot. at 4; *cf.* Stevenson Decl. ¶ 3 ("Including Plaintiff, there are approximately 11 putative class members."), Dkt. No. 45-2. The Court is not persuaded the size of the putative class renders this action unsuitable for FLSA treatment. The FLSA allows "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring an action against an employer. 29 U.S.C. § 216(b). The statute does not impose any requirement for a minimum number of similarly situated employees to bring a collective action. While Federal Rule of Civil Procedure 23(a)(1) sets forth a numerosity requirement, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013); *see Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1787154, at *2 (N.D. Cal. Apr. 25, 2013) ("Collective actions

4

under the FLSA are not subject to the requirements of Rule 23 for certification of a class action."). As the collective certification process is concerned with whether collective members are similarly situated rather than whether they are sufficiently numerous, the Court cannot find the size of the putative collective, without more, presents a bona fide dispute.

But Defendants also argue Paisan and Longbranch are not joint employers under the FLSA. Mot. at 4. "The joint employer doctrine recognizes that 'even where business entities are separate, if they share control of the terms of conditions of an individual's employment, both companies can qualify as employers.'" *Johnson v. Serenity Transp., Inc.*, 2016 WL 270952, at *10 (N.D. Cal. Jan. 22, 2016) (quoting *Guitierrez v. Carter Bros. Sec. Servs., LLC*, 2014 WL 5487793, at *3 (E.D. Cal. Oct. 29, 2014)). "[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2(a).

To establish Paisan and Longbranch are joint employers, Plaintiff would need to address the "'economic reality' of the relationship." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). Courts "typically evaluate the 'economic reality' of a labor relationship by considering the factors laid out in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983)." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 906 (9th Cir. 2013); *see Bonnette*, 704 F.2d at 1470 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). These factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470. Plaintiff must also prove eight "non-regulatory" factors that support joint employer status:

> (1) whether the work was a specialty job on the production line;
>
> (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;

5

(3) whether the premises and equipment of the employer are used for the work;

(4) whether the employees had a business organization that could or did shift as a unit from one worksite to another;

(5) whether the work was piecework and not work that required initiative, judgment or foresight;

(6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;

(7) whether there was permanence in the working relationship; and

(8) whether the service rendered is an integral part of the alleged employer's business.

*Moreau v. Air France*, 356 F.3d 942, 947-48 (9th Cir. 2004) (citing *Torres-Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997)). Because the parties dispute whether Defendants are liable under the FLSA as joint employers, the Court finds the Settlement resolves a bona fide dispute.

3. <u>Fair and Reasonable Resolution</u>

Section 207 of the FLSA prohibits an employer from requiring an employee to work more than forty hours per workweek "unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). "An employee's 'regular rate' of pay is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which [s]he is employed.'" *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 802 (9th Cir. 2010) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).

The Settlement requires Defendants to pay a total of $14,466 to Plaintiff. Settlement ¶ 3. This amount constitutes "nearly full recovery on Plaintiff's claim for FLSA overtime and FLSA liquidated damages under a three year statute of limitations." Mot. at 6; Cha Decl. ¶ 4; *see* Suppl. Br. at 2. To calculate Plaintiff's potential recovery, the parties separately examined the number of hours Plaintiff worked at Paisan and Longbranch and calculated the overtime premium for hours worked when Plaintiff worked at both restaurants on the same day and worked over 40 hours a week. Suppl. Br. at 2.

Plaintiff's counsel declares he "calculated the overtime premiums for hours worked by

6

Plaintiff when he worked on the same days at both restaurants" based on Plaintiff's time records. Baker Decl. ¶ 4, Dkt. No. 45-1; *see id.*, Ex. A (Plaintiff's time records at Longbranch and Paisan). Baker calculated the premiums from October 28, 2014 to December 3, 2015, the period Plaintiff alleges he was entitled to overtime pay. *Id.* ¶¶ 4-5; *see id.*, Ex. B (counsel's calculations of overtime payments allegedly owed). Baker calculated that Plaintiff is owed a total overtime premium of $6,857.30: $1,715.80 for overtime hours worked in 2014 and $5,141.50 for overtime hours worked in 2015. *Id.* ¶ 5. He then doubled this amount to account for liquidated damages and calculated "the total amount of FLSA overtime and FLSA liquidated damages . . . to be $13,714.60." *Id.* This, plus an additional $751.40 for missed meal and rest break premiums during the period of joint employment, resulted in a total settlement payment of $14,466.00. *Id.*

Defendants' calculation of overtime premiums is greater than Plaintiff's: they assert Plaintiff is entitled to $7,262.65 in overtime premiums. Suppl. Br. at 3 (citing Stevenson Decl.). David Stevenson, a chef and manager at Paisan and Longbranch, declares "Plaintiff's hours working at both Longbranch Saloon and Paisan Osteria were examined based on his time punch records for both restaurants." Stevenson Decl. ¶ 2. Specifically, Plaintiff worked 367.91 hours at $13 per hour; 773.92 hours at $12 per hour; 33.87 hours at $11 per hour; and 7.89 hours at $10.50 per hour. *Id.* Based on these hours and rates, Defendants conclude Plaintiff is owed overtime premiums of $7,262.65. *Id.* Adding in liquidated damages, Defendants determined Plaintiff is entitled to a total of $14,525.30. Mot. at 3. While Stevenson does not address any meal or rest break premiums, "the [p]arties feel that allocating . . . $751.40 to settle the remaining wage and hour claims pled in the [SAC] is appropriate." Suppl. Br. at 5.

Based on Plaintiff's and Defendants' calculations of Plaintiff's damages, the Settlement provides a 105.42% or 99.59% of Plaintiff's maximum FLSA recovery. Suppl. Br. at 3. The Settlement constitutes a fair and reasonable resolution of Plaintiff's FLSA claims; it makes Plaintiff virtually whole, if not more so.

**B.     Dismissal of Putative Class and Collective Claims**

Federal Rule of Civil Procedure 23(e) requires courts to approve the proposed voluntary dismissal of class claims. "Courts generally apply the same [Rule 23(e)] standard to FLSA

7

collective action settlements." *Kempen v. Matheson Tri-Gas, Inc.*, 2017 WL 475095, at *4 (N.D. Cal. Feb. 6, 2017) (citing *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323-25 (N.D. Cal. 2013)). The Ninth Circuit has held that Rule 23(e) also applies to pre-certification classes. *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); *see also Lyons v. Bank of Am., NA*, 2012 WL 5940846, at *1 n.1 (N.D. Cal. Nov. 27, 2012) ("Courts in this district have expressed some uncertainty about whether Rule 23(e) still applies to pre-certification settlement proposals in the wake of the 2003 amendments to the rule but have generally assumed that it does.").

Where parties seek to voluntarily dismiss class or collective claims prior to certification, *Diaz* requires courts to

> inquire into possible prejudice from (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

876 F.2d at 1408; *see Luo v. Zynga Inc.*, 2014 WL 457742, at *3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to dismissal of putative FLSA collective claims).

1. Possible Reliance

Nothing in the record suggests putative collective members relied on Plaintiff pursuing this action on their behalf. The parties represent there has been no media coverage of the lawsuit. It is therefore unlikely putative class and collective members knew of and relied upon the instant lawsuit to vindicate their rights. *See Hill v. Kaiser Found. Health Plan*, 2015 WL 5138561, at *4 (N.D. Cal. Sept. 1, 2015) (finding it unlikely putative class members relied on the plaintiff's class claims given lack of significant media coverage of case).

Moreover, Defendants have "unconditionally" compensated three[1] of the eleven or twelve putative collective members by paying their FLSA overtime premiums and liquidated damages

---

[1] Exhibit B to the Stevenson Declaration lists ten putative collective members, identified by their first and last initials. This list does not identify which individuals Defendants have already compensated.

[2] Stevenson informed the three individuals "that Plaintiff had filed a collective action against

8

1  thereon. Stevenson Decl. ¶ 4. Stevenson declares he met with the three individuals, gave them
2  their time punch cards for their review, and gave them information about this action.[2]  *Id.*
3  Stevenson further represents he "intend[s] to continue the process of compensating the remaining
4  putative class members."[3]  *Id.*

   2.  Time to File Other Actions

The FLSA generally carries a two-year statute of limitations. 29 U.S.C. § 255(a). But the statute of limitations may be extended to three years where the employer's violation is "willful." *Id.*; *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016). "A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Flores*, 824 F.3d at 906. The parties agree putative collective members' claims are not time-barred based on the three-year FLSA statute of limitations that applies to willful FLSA violations. Suppl. Br. at 4; SAC ¶ 21 ("Defendants, intentionally and with recklessly disregard [sic] their responsibilities under the FLSA, and without good cause or exemption, failed to pay Plaintiff and those similarly situated hourly employees their overtime compensation[.]").

The parties provide a list that identifies the putative collective members by their initials and the first and last days the employee worked at both restaurants on the same day. Stevenson Decl., Ex. B. The parties do not, however, indicate when the employees received their paychecks for the work period for which overtime compensation is owed, which would indicate when their FLSA claims accrued. *See id.*; *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) (under FLSA, "[a] new cause of action accrues at each payday immediately following

---

[2] Stevenson informed the three individuals "that Plaintiff had filed a collective action against Paisan Osteria and Longbranch Saloon that included a claim for unpaid overtime in violation of the [FLSA], based on the theory that Paisan Osteria and Longbranch Saloon should be viewed as a single employer" and "that Plaintiff sought to represent them and have the case proceed as a collective action[.]" *Id.* He further stated that "they may receive communication from Plaintiff's attorney and they are free to talk to him or refuse to talk to him if they wanted." *Id.* Finally, Stevenson "unconditionally" gave each employee a check in the amount of their overtime premium and liquidated damages. *Id.*

[3] At the hearing, Defendants represented that in the time since they filed the Supplemental Brief, they have compensated an additional four putative collective members and have reached out via certified mail to two more who no longer work for Defendants.

9

the work period for which compensation is owed."). Based on the Court's review of this list, it appears the employees' claims fall within the three-year statute of limitations. Dismissal of the FLSA claim therefore will not hinder putative collective members' ability to file their own claims. Plaintiff initiated this action on April 8, 2016, less than a year-and-a-half after the earliest putative collective member could have received a paycheck for which he or she was owed an overtime premium. *See* Stevenson Decl., Ex. B (J.I. started working at both restaurants on the same day on October 29, 2014). Other putative collective members started to work at both Paisan Osteria and Longbranch Saloon as recently as January 5, 2016. *See id.* Moreover, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Under either the two- or the three-year statute of limitations under the FLSA, putative collective members have time to assert their own claims.

3. <u>Settlement or Concession of Class Interests</u>

Plaintiff does not seek to dismiss his collective claim with prejudice. *See* Settlement ¶ 2. As such, "the rights or claims of the putative [collective] members are not compromised." *Luo*, 2014 WL 457742, at *4.

**C. Release**

The parties originally agreed to release many claims that are wholly unrelated to Plaintiff's claims. *See* Settlement ¶ 7. In its Order for Supplemental Briefing, the Court noted that "'[c]ourts in this district routinely reject FLSA settlements when the scope of the release goes beyond the overtime claims asserted in the complaint.'" Order at 3 (quoting *Dunn*, 2016 WL 153266, at *5 (collecting cases)). The parties represent they "have agreed to narrow the release subject to court approval to the claims at issue in the [SAC]." Suppl. Br. at 5. By limiting the release to only Plaintiff's asserted claims, it becomes "fairly and reasonably tethered to the consideration" Plaintiff receives under the Settlement. *Dunn*, 2016 WL 153266, at *5.

**CONCLUSION**

In light of the foregoing analysis, the Court finds the Settlement Agreement with the

10

revised release with respect to Plaintiff's FLSA claim is a fair and reasonable resolution of a bona fide dispute. The Court further finds dismissal of the FLSA claim will not prejudice the putative collective. As such, the Court ORDERS the following:

(1) The Settlement of Plaintiff's FLSA claim is **APPROVED**.

(2) Plaintiff's individual claims are **DISMISSED WITH PREJUDICE**.

(3) The FLSA collective claim is **DISMISSED WITHOUT PREJUDICE**.

(4) No later than May 15, 2017, Plaintiff shall file either a Stipulation of Dismissal or a status report regarding the execution of the Settlement.

**IT IS SO ORDERED.**

Dated: April 17, 2017

MARIA-ELENA JAMES
United States Magistrate Judge

11